IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GUS JOHNSON,                    :
AIS #108854                    :
                               :
      Plaintiff,               :
                               :
vs.                            :      CIVIL ACTION 15-135-CG-M
                               :
KIM THOMAS, *et. al.*,         :
                               :
      Defendants.              :


REPORT AND RECOMMENDATION

This action under 42 U.S.C. § 1983 brought by an
Alabama prison inmate, Gus Johnson, proceeding *pro se* and
*in forma pauperis,* was referred to the undersigned pursuant
to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72, and is
now before the Court on Plaintiff's Complaint (Doc. 1),
Defendants, Cynthia Stewart, Alfie Pacheco, and Calvin
Wilson's, Answer, Special Report, and Amended Special
Report[1] (Docs. 9, 10, 20), and Plaintiff's Replies (Docs.
11 and 28). The Court has converted Defendants' Special
Report into a Motion for Summary Judgment (Doc. 12), and,
after consideration of such, and for the reasons set out
below, it is recommended that Defendants' Motion for

---

[1] Kim Thomas (former Commissioner) has also been named as a defendant,
but he is no longer employed with ADOC and the record does not reflect
that he has been served with this Complaint.  Defendant Thomas has not
filed any responsive pleading.

Summary Judgment be granted and Plaintiff's action be dismissed with prejudice.[2]

FACTS AND PROCEEDINGS

Plaintiff, Gus Johnson, is an Alabama Department of Corrections ("ADOC") inmate, currently serving a life sentence for Burglary II at the J.O. Davis Correctional Facility.  (Doc. 1 at 6).  Kim Thomas (Commissioner), Cynthia Stewart (Warden), Alfie Pacheco (Shift Sergeant and Commander) and Calvin Wilson (Correction Officer I) have been named as Defendants.  (Doc. 1).

This action arises out of an incident on August 10, 2014, wherein Plaintiff was attacked by another inmate, Quincy Woodson.  Plaintiff contends that Defendants "failed to secure inmate after altercation" and "failed to intervene during or after inmate on inmate assault". (Doc. 1, a 6).  According to Plaintiff, on the day of the incident, Defendants Pacheco and Wilson attempted to take a cell phone by force from another inmate, Quincy Woodson, which resulted in an altercation.  (Doc. 1-1, at 1).  Defendants were "losing the fight" and retreated to the

---

[2]  Also pending before this Court is Plaintiff's Objection (Doc. 31) to this Court's denial of Plaintiff's Motion to Compel certain discovery (Doc. 27).  Plaintiff's objection is taken as a Motion to Reconsider. However, in light of the conclusions set forth herein and because the discovery which is the subject of Plaintiff's objection will offer no substantive support for Plaintiff's claims, Plaintiff's Motion to Reconsider is denied.

administrative area of the prison at which point, inmate Woodson assaulted another inmate and then Plaintiff "by hitting him in the face causing damage to his right eye, knocking him down and kicking him in the side." (*Id.* at 3-4). Plaintiff contends that he was unable to flee the attack because Defendants Pacheco and Wilson locked the only exit door and that Plaintiff's assault was observed by these Defendants because there are cameras in each dormitory. *Id.*

As a result of the above-described incident, Plaintiff filed a Complaint against Defendants for deliberate indifference to inmate-on-inmate assault, failure to provide adequate security, and failure to prosecute. (*Id.* at 5). For relief, Plaintiff requests "1 million dollars actual punitive and compensatory damages." (*Id.* at 7).

Defendants, Stewart, Pacheco, and Wilson filed their Answer, Special Report, and Amended Special Report denying Plaintiff's allegations and pleading multiple defenses (Docs. 9, 20, 10). Defendants' Special Report states that at 8:35 p.m. on August 10, 2014, Defendants Pacheco and Wilson were conducting a random search of the M-Dorm TV room when an inmate (Adolph Bishop) tossed another inmate (Brandon Pettway) an item and inmate Pettway ran from the area to the M-Dorm. (Doc. 9, at 2). Defendant Wilson

3

followed inmate Pettway and ordered him to "stop", but Pettway refused and threw the item into M-Dorm. *Id.* Defendant Wilson and Pacheco were searching M-Dorm for the thrown item, when Defendant Pacheco was tackled by inmate Woodson. *Id.* Defendant Pacheco sprayed inmate Woodson with Sabre Red, causing him to leave the dorm, only to return with a broom that he refused to put aside. (*Id.* at 3). In the interim, an unknown inmate struck Defendant Wilson in the back of the head. *Id.* Several inmates then gathered around Defendants Pacheco and Wilson in a threatening manner, at which time Defendants Pacheco and Wilson exited the dorm into the yard area and called for assistance. *Id.* At 8:45 p.m., six other employees of the correctional facility arrived and inmate Woodson was handcuffed. (Doc. 9, Exhibit E, at 2). Thereafter, all of the inmates were instructed to get into their assigned beds at which time it was discovered that Plaintiff was bleeding. (Doc. 9, at 2). Plaintiff informed Defendant Pacheco that inmate Woodson "punched me in the face and kicked me in the side, I don't know why he did it." *Id.* Plaintiff was then taken to the healthcare unit. *Id.* The above facts are corroborated by the affidavits of Cynthia Stewart, Alfie Pacheco, and Calvin Wilson, in addition to

the subject incident report and duty officer report. (Doc. 9, Exhibits A-E).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to the party who moves for summary judgment. FED.R.CIV.P. 56(a).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).  However, Rule 56(e) states that:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

FED.R.CIV.P. 56(e).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).  "Summary judgment is mandated where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

Also, it is well settled that a conclusion cannot be taken as true, and the Court will not accept conclusory allegations as facts in consideration of a motion for summary judgment.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009); *see also Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000)("[t]his court has consistently held that conclusory allegations without specific supporting facts have no probative value"); *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984)(a plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment).

<u>42 U.S.C. § 1983 and the Eighth Amendment</u>

This Court reads Plaintiff's claim as falling under 42 U.S.C. § 1983 (1994) as an alleged violation of Plaintiff's Eighth Amendment rights.  More specifically, Plaintiff's Complaint asserts that Defendants' actions subjected Plaintiff to a substantial risk of serious harm (inmate-on-inmate assault), to which they were indifferent.  According to Plaintiff, these claims are supported by the facts that Defendants Wilson and Pacheco[3] left the area of the Plaintiff's attack just before it occurred (and without securing inmate Woodson), locked the only exit, and failed to intervene once the attack occurred. (Doc. 1-1; Doc. 11, at 3).  Plaintiff also contends that the facility was understaffed and that defendants saw the attack because there were cameras in the area. (Doc. 1-1)

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights … secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in

---

[3]Plaintiff's Complaint names Cynthia Stewart, the warden of J.O. Correctional Facility, as a defendant. However, all facts indicate that Defendant Stewart was not present when Plaintiff's incident occurred and that she was not involved until she was notified of the incident after-the-fact.  As a result, the above discussion will be limited to Defendants Pacheco and Wilson and Defendant Stewart will be addressed separately below.

> equity, or other proper proceeding for
> redress . . . .

42 U.S.C. § 1983 (1994).  Additionally, the Eighth

Amendment provides that, "[e]xcessive bail shall not be

required, nor excessive fines imposed, nor cruel and

unusual punishments inflicted."  U.S. Const. amend. VIII.

The Eighth Amendment's proscription against cruel and

unusual punishment prohibits prison officials from

exhibiting deliberate indifference to a substantial risk of

serious harm to an inmate.  *Farmer v. Brennan*, 511 U.S.

825, 828 (1994).

The Supreme Court summarized a state's constitutional

responsibilities with regard to inmates as follows:

> [W]hen the State takes a person into its
> custody and holds him there against his
> will, the Constitution imposes upon it a
> corresponding duty to assume some
> responsibility for his safety and
> general well-being . . . . The rationale
> for this principle is simple enough:
> when the State by the affirmative
> exercise of its power so restrains an
> individual's liberty that it renders him
> unable to care for himself, and at the
> same time fails to provide for his basic
> human needs – *e.g.,* food, clothing,
> shelter, medical care, and reasonable
> safety – it transgresses the substantive
> limits on state action set by the Eighth
> Amendment and the Due Process Clause.

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S.

189 (1989)(citations omitted).

In order to prevail on his Eighth Amendment claims, Plaintiff must prove three elements: "(1) a condition of confinement that inflicted unnecessary pain or suffering, *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (citations omitted), (2) the defendant's 'deliberate indifference' to that condition, *Wilson v. Seiter*, 501 U.S. 294 (1991) (citations omitted), and (3) causation, *Williams v. Bennett*, 689 F.2d 1370 (11th Cir. 1982) (citations omitted.)." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993).

In *Sims v. Mashburn*, 25 F.3d 980, 983 (11th Cir. 1994), the court described the first two elements as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

The objective component of an Eighth Amendment claim inquires whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon the prisoner." *LaMarca*, 995 F.2d at 1535. This standard requires that the alleged deprivation be "objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting

*Wilson*, 501 U.S. at 298).  The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . ., but must be balanced against competing penological goals."  *LaMarca*, 995 F.2d at 1535 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation marks omitted)).

The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind."  *Sims*, 25 F.3d at 983-84 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).  In a prison condition case, the required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety.  *Farmer*, 511 U.S. at 834 (citations omitted).  In defining "deliberate indifference," the Supreme Court in *Farmer* stated:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

The Court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate

indifference" under the Eighth Amendment.  *Id.* at 839-40.
Moreover, there is no liability for "an official's failure
to alleviate a significant risk that he should have
perceived but did not . . . ."  *Id.* at 838.  It is not
enough that a plaintiff proves that the defendant should
have known of the risk, even though he did not know; actual
subjective knowledge is the key.  *See, e.g.*, *Cottrell v.
Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996).

A prison official's duty under the Eighth Amendment is
to ensure "reasonable safety," a "standard that
incorporates due regard for prison officials' 'unenviable
task of keeping dangerous men in safe custody under humane
conditions.'"  *Farmer*, 511 U.S. at 844-45 (citations
omitted).  "Whether one puts it in terms of duty or
deliberate indifference, prison officials who act
reasonably cannot be found liable under the Cruel and
Unusual Punishments Clause."  *Id.*

DISCUSSION

A.   Failure to Protect/Failure to Intervene

In order for Plaintiff to meet his burden on the
objective element of his failure to protect claim,
Plaintiff must establish that the conditions under which he
was incarcerated presented "a substantial risk of serious
harm."  *Farmer*, 511 U.S. at 834.  "[A]n excessive risk of

inmate-on-inmate violence at a jail creates a substantial risk of serious harm . . . . And confinement in a prison where violence and terror reign is actionable." *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005). However, "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment." *Id.* Moreover, a "prison custodian is not the guarantor of a prisoner's safety." *Id.* at 1321 (citations omitted). Thus, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.

In the present case, Plaintiff has not alleged that he was exposed to a constant threat of inmate-on-inmate violence, *see Purcell,* 400 F.3d at 1320, or to any other condition that presented a substantial risk of serious harm. *Farmer,* 511 U.S. at 834; *see also Hale v. Tallapoosa Cnty.,* 50 F.3d 1579, 1583 (11th Cir. 1995)("Hale established that, in the two years prior to the attack, that inmate-on-inmate violence occurred regularly). Instead, Plaintiff has only asserted that he was the victim of an isolated attack by another inmate, without warning, and without cause. Based on these facts, alone, no

conclusion can be reached that the conditions of Plaintiff's incarceration amount to an objective finding of a substantial risk of serious harm.

Plaintiff's contention that the substantial risk of serious harm stemmed from a lack of overall security, i.e. the facility being understaffed, equally falls short of the requisite proof necessary for plaintiff to prevail. Plaintiff's Complaint does not allege that the lack of officers on duty created an unsafe environment, in general, or caused Plaintiff to be consistently subjected to inmate-on-inmate violence and Plaintiff has presented no facts to that effect.  Instead, Plaintiff, without any causal analysis, only states that at the time of the attack there were three officers on duty (approximately one per every 133 inmates).  (Doc. 1-1, at 2). Assuming this statement is true, there are no facts that indicate this amount was objectively insufficient or lead to an environment of fear of attack.

Because the facts pled by Plaintiff do not create a question of material fact as to whether Defendants objectively subjected Plaintiff to a substantial risk of serious harm, a required element of his claim, the Court finds that Defendants' Motion for Summary Judgment is due to be granted.

Nevertheless, assuming, arguendo, that Plaintiff did satisfy the objective element of his Eighth Amendment claims, he must also show that the defendants were deliberately indifferent to the risk of serious harm to him.  Under the subjective component of the Eighth Amendment analysis, deliberate indifference requires that the prison official be aware of both the "facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 387.

A prison official cannot avoid liability "by showing that . . . he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault. . . ."  *Id.* at 843. However, Eighth Amendment liability may be avoided by showing: "(1) 'that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger;' (2) 'that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent;' or (3) that 'they responded reasonably to the risk, even if the harm ultimately was not averted.'"  *Daniels v. Baldwin Cnty. Corrs. Ctr., Rodriguez v. Sec'y Dept. of Corrs.,* 508 F.3d 611, 617-18 (11th Cir.

14

2007)(citation omitted).  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Hale*, 50 F.3d at 1583 (quoting *Farmer*, 511 U.S. at 842).

Plaintiff's allegations fail to raise a question of material fact as to the subjective component of his Eighth Amendment claims.  In fact, Plaintiff's Complaint does not allege any facts from which it could be determined that the defendants knew of any potential danger. (Doc. 1-1). Rather, it is undisputed that Plaintiff's attack was not warned of and was not the result of any kind of threat previously made. In fact, when asked about the attack, Plaintiff stated "I don't know why he did it." (Doc. 9, at 3).  Such a spontaneous attack by one prisoner on another fails to demonstrate that the defendants were actually put on notice of a threat of actual harm, or that they were able to draw the inference that an attack might occur.[4]

There is, likewise, no factual support that Defendants were deliberately indifferent because they failed to

---

[4] There are also no facts indicating that inmate Woodson's attack on Defendant Pacheco created the requisite subjective awareness.  Based on the circumstances, there are no facts to support that a previous attack on Defendant Pacheco would give rise to an inference that inmate Woodson would later attack Plaintiff, without cause.  Furthermore, even if such an inference could have been made, liability would still not exist because Defendants' actions were reasonable given the totality of the circumstances.

intervene in Plaintiff's attack when it occurred.   More
specifically, the events described by the parties
demonstrate a situation wherein two officers were being
attacked and/or surrounded by multiple prisoners and
ultimately fled the area for safety while awaiting
assistance.   There are no facts that show Defendants
Pacheco and Wilson, or any other officer witnessed
Plaintiff's attack, and Defendant Pacheco has stated in his
Affidavit that he that did not witness Plaintiff's attack
or have access to security footage.   (See Doc. 9,   Exhibit
B).   Moreover, the mere presence of cameras does not meet
the requisite level of subjective proof to establish that
the defendants witnessed the incident and were indifferent
or failed to act reasonably.[5]

Accordingly, the Court concludes that Plaintiff failed
to prove that Defendants actually knew about the potential
attack and failed to provide him with reasonable safety.[6]

B. Respondeat Superior Liability

Plaintiff claims Defendant Stewart[7] is liable for
failing to protect him based on the fact that she is the

---

[5] Moreover, given the undisputed totality of the situation described by
the parties, it cannot be said that the actions of the Defendants in
exiting the area and securing the door behind them, was unreasonable,
much less deliberately indifferent.
[6] Because this Court has determined that Plaintiff has failed to
establish a violation of a constitutional right, for the reasons
discussed herein above, it is unnecessary to address the merits of the
defenses raised by Defendants, including whether they have qualified
immunity.

Warden at J.O. Correctional facility.  Plaintiff has asserted that Stewart is liable for deliberate indifference and failure to prosecute[8]. (Doc. 1, at 5).  This Court understands Plaintiff's claims to assert that Defendant Stewart is liable to Plaintiff because, as a supervisor, she was (1) responsible for the action and/or inactions of Defendants Pacheco and Wilson during the time of Plaintiff's attack and (2) responsible to the staffing of J.O Correctional facility which Plaintiff asserts was understaffed and, therefore, she failed to provide adequate security.  These claims are rooted in the theory of *respondeat superior* or vicarious liability.

> It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates "on the basis of respondeat superior or vicarious liability." *Belcher v. City of Foley,* 30 F.3d 1390, 1396 (11th Cir.1994) (citation and quotation omitted). "Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a

---

[7] Plaintiff's Complaint is also read to imply these same assertions against Defendant Thomas.  Although Defendant Thomas has not filed a responsive pleading, this Court finds that the above analysis and conclusions would equally apply to any potential claim Plaintiff has against Defendant Thomas and, as a result, summary judgment is proper with respect to Defendant Thomas as well.

[8] Plaintiff has no constitutionally protected interest in the criminal prosecution of inmate Woodson.  *See Otero v. U.S. Atty. Gen.*, 832 F. 2d 141, 141 (11th. Cir. 1987) ([A] private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another.) (*citing to Linda R.S. v. Richard D.,* 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973).  As a result, this Court finds that Plaintiff has failed to show any facts that Defendants Stewart or Thomas violated Plaintiff's constitutional rights by failing to prosecute inmate Woodson and this claim is due to be dismissed.

> causal connection between actions of the
> supervising official and the alleged
> constitutional deprivation. The causal connection
> can be established when a history of widespread
> abuse puts the responsible supervisor on notice
> of the need to correct the alleged deprivation,
> and he fails to do so. The deprivations that
> constitute widespread abuse sufficient to notify
> the supervising official must be obvious,
> flagrant, rampant and of continued duration,
> rather than isolated occurrences." *Brown v.
> Crawford,* 906 F.2d 667, 671 (11th Cir.1990)
> (citations omitted). In addition, the causal
> connection may be established and supervisory
> liability imposed where the supervisor's improper
> "custom or policy ... result[s] in deliberate
> indifference to constitutional rights." *Rivas v.
> Freeman,* 940 F.2d 1491, 1495 (11th Cir.1991)
> (citing *Zatler v. Wainwright,* 802 F.2d 397 (11th
> Cir.1986)).

*Hartley v. Parnell*, 193 F. 3d 1263, 1269 (11th Cir. 1999).

First, considering Plaintiff's claim with regard to Defendant Pacheco's and Wilson's actions and/or inactions, i.e. failure to protect or intervene, this Court finds that Plaintiff has not shown that Defendant Stewart was liable. There is no evidence that Defendant Stewart was directly involved in the altercation between Defendants Pacheco and Wilson and the prisoners of M-dorm leading up to Plaintiff's attack.  Similarly, there is no evidence that at the time of Plaintiff's attack there was a history of widespread abuse such that Defendant Stewart would have been put on notice of an alleged deprivation.  Moreover, Defendant Stewart has outlined multiple policies and

procedures relating to the proper actions/inactions of officers when those officers are faced with circumstances, such as those which took place on the night of Plaintiff's attack (Doc. 20-1), and there is a lack of evidence that those policies created a risk of substantial harm from which liability could potentially be imposed upon Defendant Stewart, as a supervisor.

Plaintiff's claim against Defendant Stewart that inadequate staffing resulted in inadequate security also fails to establish liability against Defendant Stewart. While it is undisputed that there is a staffing shortage at the facility, the Affidavit of Stewart explains that on the night of Plaintiff's attack there were three officers (the same number identified by Plaintiff) and one sergeant assigned to the facility, which is the minimum required amount. (Doc. 20-1, at 3). Furthermore, Defendant Stewart's Affidavit states that J.O. Correctional facility is constantly recruiting to fill vacancies and allows officers to work overtime to ensure the minimum number of officers are working at all times. *Id*. While the number of staff may not be ideal, there is no evidence that having the minimum amount of officers on duty objectively created a substantial risk of harm. Nevertheless, assuming there were facts to support the requisite objective findings,

Plaintiff has still failed to show that Defendant Stewart was subjectively indifferent to the shortage or that the staffing conditions were causally related to Plaintiff's attack and, therefore, no supervisory liability has been established.

## Conclusion

There is no question of material fact from which a jury could reasonably find that Plaintiff was subjected to a substantial risk of serious harm, of which the defendants were subjectively aware and deliberately indifferent, or that Defendant's conduct caused the deprivation of Plaintiff's constitutional rights.  As a result, it is recommended that Defendants' Motion for Summary Judgment be granted and this action be dismissed with prejudice.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. GenLR 72(c)(2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations

contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 20th day of November, 2015.

s/ BERT W. MILLING, JR
UNITED STATES MAGISTRATE JUDGE